USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 2/7/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PHILIPE BUHANNIC,

                Plaintiff,

v.

MARCY FRIEDMAN,

                Defendant.

No. 18-CV-5729 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Philipe Buhannic, proceeding *pro se*, brings this action against the Honorable Justice Marcy S. Friedman of the Supreme Court of the State of New York, New York County, Commercial Division, who is presiding over litigation brought by Plaintiff in that court. Plaintiff alleges that Justice Friedman unlawfully discriminated against him based on his national origin and *pro se* status by denying certain of his motions in the state court litigation, and by acting in a biased manner against him in courtroom proceedings. Before the Court is Defendant's motion to dismiss. For the reasons that follow, Defendant's motion is granted.

## BACKGROUND[1]

Plaintiff is a French citizen who has created businesses in the Finance and Technology industries around the world, including in the United States. In 1999, Plaintiff and his brother co-

---

[1] The facts in this section are drawn from Plaintiff's Amended Complaint, its attachments, and the record in the state court action of which the Court takes judicial notice. *See Roth v. Jennings*, 489 F.3d 499, 509–510 (2d Cir. 2007). They are assumed to be true for the purposes of this motion. *See id.* at 510. In light of Plaintiff's *pro se* status, the Court will also consider factual allegations made in Plaintiff's opposition to Defendant's motion to dismiss. *See Washington v. Westchester County Dep't of Corr.*, No. 13 Civ. 5322(KPF), 2015 WL 408941, at *1 n.1 (S.D.N.Y. Jan. 30, 2015) (citing cases). The Court refers to the ECF pagination of the original Complaint and Amended Complaint for ease of reference.

founded a company called Trading Screen Inc. ("TradingScreen"), which is a privately-held Delaware corporation with its principal place of business in New York. Plaintiff served as TradingScreen's CEO until he was terminated in May 2016. On July 11, 2016, Plaintiff sued TradingScreen in the Supreme Court of New York, New York County, Commercial Division, asserting breach of contract and related claims. Justice Friedman was assigned to the case, which is ongoing. *See Buhannic et al. v. TradingScreen, Inc. et al.*, Index No. 653624/2016 (Sup. Ct., N.Y. Cty.) (the "State Action").

**A. The State Action**

In a nutshell, Plaintiff's State Action seeks injunctive and monetary relief for an alleged "boardroom coup d'état" that was purportedly orchestrated by certain directors of TradingScreen to take control over the company away from Plaintiff. Verified Amended Compl. at ¶ 1, *Buhannic et al.*, Index No. 653624/2016 (Doc. 37). Plaintiff alleges that the defendants concocted a scheme to fire him for hitting an employee, which he claims he never did, and then used his termination as grounds for finding that most of his shares were forfeited under his employment agreement. This effectively released Plaintiff's controlling interest in the company. Plaintiff asserts in the State Action that the defendants breached his employment agreement and that he is still entitled to a majority of shares in TradingScreen.

Between the time Plaintiff commenced the State Action and the present action, he was represented by four consecutive sets of counsel, all of whom withdrew, and Justice Friedman held several conferences and ruled on 18 motion sequences. Of the plethora of motions filed in the State Action, the following are the most relevant to Plaintiff's claims here. On March 2, 2017, Justice Friedman granted in part Plaintiff's motion for a preliminary injunction and enjoined the defendants from taking actions that would further dilute Plaintiff's asserted majority

interest in TradingScreen. On September 26, 2017, Plaintiff moved in part to enforce an indemnification agreement against TradingScreen, in order to recover an advancement of attorneys' fees and costs spent on the litigation to date; thereafter, Plaintiff moved for an expedited hearing on whether he was wrongfully terminated and to resolve the number of his vested shares. Justice Friedman denied both motions.

At a conference on February 8, 2018, Justice Friedman permitted Plaintiff to file a motion for further discovery, a motion to release the bond securing the March 2017 preliminary injunction, and a motion for leave to amend his complaint. Plaintiff subsequently filed those motions, in addition to another order to show cause seeking a preliminary injunction for indemnification from TradingScreen, among other relief. Justice Friedman declined to issue the order to show cause, but at a telephone conference on March 5, 2018, she permitted Plaintiff to file another order to show cause that complied with the court's rules. Justice Friedman denied the other foregoing motions after oral argument on May 15, 2018. She also granted TradingScreen's motion to seal certain documents and its cross-motion for sanctions against Plaintiff for filing motions seeking relief that had already been denied.

After granting Plaintiff's fourth counsel permission to withdraw, Justice Friedman granted TradingScreen's request for leave to file a motion to compel Plaintiff to appear at a deposition that TradingScreen claimed Plaintiff had refused to schedule. On July 31, 2018, Plaintiff then filed a motion seeking Justice Friedman's recusal due to her purported bias against him on the basis of his national origin and *pro se* status. Justice Friedman denied the motion on December 6, 2018, and continues to preside over the action.

### B. This Action

On June 25, 2018, Plaintiff filed a Complaint in this Court repeating his allegations that Justice Friedman discriminated against him in the State Action based on his national origin and *pro se* status. *See* Compl. (Dkt. 1). Plaintiff requested that Justice Friedman "be taken off [the] case immediately and potentially reprimanded," Compl. at 18, and concluded that "anything less than a change of judge and a clear decay of ALL her decisions would be a non-remedy[.]" *Id.* at 24.

On August 6, 2018, Plaintiff filed the Amended Complaint, which reiterates the allegations of the original Complaint, but solely requests $500,000 in damages, no longer seeking that Justice Friedman be recused from the State Action and that her previous decisions be vacated. *Compare* Amended Compl. at 26 (Dkt. 9), *with* Compl. at 18, 24. Even though the Amended Complaint does not request such relief, the Court nevertheless considers Plaintiff's requests in his original Complaint for an injunction vacating Justice Friedman's prior decisions and ordering her to recuse herself. *See Fleming v. City of New York*, No. 10 Civ. 3345(AT), 2014 WL 6769618, at *3 (S.D.N.Y. Nov. 26, 2014) ("Even though an amended complaint ordinarily supersedes the original and renders it of no legal effect, the Court considers both Plaintiff's original and amended complaints," because "*pro se* civil rights complaints should be read with ... generosity[.]").

Plaintiff asserts that Justice Friedman discriminated against him based on his national origin "almost in every hearing" (although the basis for such allegation is unclear from a review of the transcripts attached to the Complaint and Amended Complaint). He alleges that she "refused to talk to him because he is French and has a slight French accent"; that she "criticized [his] French accent and treated [him] in a demeaning manner just for having an accent"; that "she

4

acted like no English speaking person could understand [him]"; and that she "managed to correct and erase her offen[s]es from many of the transcripts," such that they "do not reveal the amount of prejudice and bias she directed at [him at] each hearing." *Id.* at 4–5, 7–8. Plaintiff also alleges that Justice Friedman "discriminated" against him due to his *pro se* status by holding him "to the same standard as represented parties," and that her behavior violated the New York Rules for Judicial Conduct. *Id.* at 13, 21. He further alleges that this purported "discriminatory attitude" of Justice Friedman's was the "main drive" behind her decision to deny certain of his motions, such as the motions for indemnification and for leave to amend his complaint. *Id.* at 11, 14–15.

Plaintiff also claims that he was deprived of due process in the State Action because the defendants in that case improperly served him (though he does not specify with respect to which documents), that he "was deprived of his right to discovery," and that Justice Friedman unfairly allocated more time to defense counsel to speak in conferences. *Id.* at 15–16, 20–23.

Finally, Plaintiff alleges that Justice Friedman should have recused herself because of "her close friendship with Judge Martin E. Ritholtz who leads the litigation department at Shiboleth," the third law firm that withdrew as Plaintiff's counsel. *Id.* at 9–10.

Although Plaintiff does not cite 42 U.S.C. § 1983 in the original or Amended Complaint, the Court construes his pleadings as asserting claims thereunder, as the statute provides a private right of action to recover money damages for constitutional violations committed by persons "acting under color of state law," and Plaintiff references the statute in his opposition to the motion to dismiss. *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 55 (2d Cir. 2014) (quoting 42 U.S.C. § 1983); Pl's Mem. Opp. at 10 (Dkt. 18). In addition to alleging violations of his due process rights, the Court construes the pleadings as asserting violations of Plaintiff's

equal protection rights, in light of the allegations to that effect, also in his opposition. *See* Pl's Mem. Opp. at 15–20.

On August 20, 2018, Defendants moved to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction and failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), and to stay discovery while the motion to dismiss remains pending. *See* Dkt. 15. Plaintiff opposed the motion, *see* Dkt. 18, and Defendant replied, *see* Dkt. 19.

## LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where, as here, the complaint was filed *pro se*, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Id.* (citing *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009)).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting

jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

## DISCUSSION

### I. Judicial Immunity

"Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction[.]" *Pierson v. Ray*, 386 U.S. 547, 553–554 (1967). In fact, "[a]s early as 1872, the Supreme Court recognized that it was a general principle of the highest importance . . . that a judicial officer, in exercising the authority vested in h[er], should be free to act upon h[er] own convictions, without apprehension of personal consequences to h[er]self." *Stump v. Sparkman*, 435 U.S. 349, 355 (1978). Were judges required to face the fear "that unsatisfied litigants may hound [them] with litigation charging malice or corruption[,]" this would result in "intimidation" rather than "principled and fearless decisionmaking." *Pierson*, 386 U.S. at 554. Thus, for decades courts have found that judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities, and accordingly, "even allegations of bad faith or malice cannot overcome judicial immunity." *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) ("[J]udges generally have absolute immunity from suits for money damages for their judicial actions."); *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

Historically, courts have been less likely to find that judges are immune from claims seeking injunctive relief—as opposed to damages—against them. *See, e.g., Erdmann v. Stevens*, 458 F.2d 1205, 1208 (2d Cir. 1972) ("[N]o sound reason exists for holding that federal courts should not have the power to issue injunctive relief against the commission of acts in violation of a plaintiff's civil rights by state judges acting in their official capacity"), *cert. denied*, 409 U.S.

889 (1972). Indeed, in 1984, the Supreme Court affirmed the grant of an injunction against a magistrate judge accused in part of unconstitutionally imposing bail on individuals arrested for non-incarcerable offenses under Virginia law. *See Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984) (concluding that "judicial immunity is not a bar to prospective relief against a judicial officer acting in her judicial capacity"). Two years later, however, Congress endorsed a more expansive approach to judicial immunity from injunctive relief. By enacting Section 309 of the Federal Courts Improvement Act of 1986, Congress amended 42 U.S.C. § 1983 to provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless [1] a declaratory decree was violated or [2] declaratory relief was unavailable." Pub. L. No. 104-317, 110 Stat. 3847, 3853 (1996). Accordingly, absent the latter two exceptions, judges are now immune from injunctive relief sought based on acts conducted in their judicial capacity. *See Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999).

### A. Plaintiff's Demand for Damages

Justice Friedman is judicially immune from liability for Plaintiff's damages claim under 42 U.S.C. § 1983, which seeks $500,000 from Justice Friedman for due process and equal protection violations predicated on her allegedly discriminatory treatment towards him. Judicial immunity can be overcome only where a judge takes actions "in the complete absence of all jurisdiction" or where the judge's actions were "nonjudicial." *Mireles*, 502 U.S. at 11–12. In other words, to be immune from liability for damages, a defendant judge must have taken "the challenged action [when] [s]he had jurisdiction over the subject matter before h[er]," and the "action in question" must be "judicial in nature." *Huminski v. Corsones*, 396 F.3d 53, 74–75 (2d Cir. 2005). That is the case here.

8

Justice Friedman has subject matter jurisdiction over the State Action. The New York State Supreme Court is a court having "general original jurisdiction in law and equity." N.Y. Const. Art. VI § 7(a); *see also Thrasher v. U. S. Liability Ins. Co.*, 19 N.Y.2d 159, 166 (1967) ("The Supreme Court is a court of general jurisdiction, and it is competent to entertain all causes of action unless its jurisdiction has been specifically proscribed.") (citation omitted). Justice Friedman therefore has jurisdiction because Plaintiff asserts garden variety state common law claims for breach of contract and breach of fiduciary duty. Plaintiff nonetheless argues that Justice Friedman lacks subject matter jurisdiction over the State Action because, under the diversity statute, 28 U.S.C. § 1332, there is complete diversity between the parties and the amount in controversy exceeds $75,000. But the diversity statute does not provide a federal court with *exclusive* jurisdiction; rather, it confers concurrent jurisdiction with that of state courts. *See Gottlieb v. Carnival Corp.*, 436 F.3d 335, 340 (2d Cir. 2006); *Application of Rosenthal-Block China Corp.*, 183 F. Supp. 659, 661 (S.D.N.Y. 1960) ("The diversity jurisdiction of the federal courts is concurrent with that of the state courts unless and until made exclusive by invocation in the manner provided by law"). Thus, the fact that the State Action could have been heard in federal court on diversity grounds, does not impact the propriety of the State Court's exercise of subject matter jurisdiction over that case.

Each instance of Justice Friedman's conduct that Plaintiff complains about is also judicial in nature. Pursuant to *Stump v. Sparkman*, an act is judicial in nature when "it is a function normally performed by a judge," and when the parties "dealt with the judge in [her] judicial capacity." 435 U.S. at 362. The Second Circuit also looks to state law to determine whether these factors are present in a given case. *Huminski*, 396 F.3d at 76. Justice Friedman's decisions to deny Plaintiff's various motions in the State Action are quintessential judicial acts. *See id.* at

9

75–76 ("Clearly, the paradigmatic judicial act is the resolution of a dispute between parties who have invoked the jurisdiction of the court."); *Tarter v. State*, 68 N.Y.2d 511, 518–519 (1988) (characterizing decisions involving a judge's application of law and exercise of judgment as "classically judicial tasks"). Justice Friedman is therefore immune from attack on the propriety of her rulings on Plaintiff's motions. To the extent Plaintiff's § 1983 claim is premised on Justice Friedman's conduct at hearings and conferences, such conduct also constitutes judicial action. *See Rios v. Third Precinct Bay Share*, No. 08-CV-4641 (JFB)(ETB), 2009 WL 2601303, at *3 (E.D.N.Y. Aug. 20, 2009) (presiding over hearings is a judicial act); *Cameron v. Wise*, No. 09 Civ. 967(PKC)(JLC), 2011 WL 1496341, at *9 (S.D.N.Y. Apr. 20, 2011) (same), *report and recommendation adopted*, No. 09 Civ. 967(PKC)(JLC), 2011 WL 3479295 (S.D.N.Y. Aug. 4, 2011). Moreover, Plaintiff's allegations concerning Justice Friedman's purported bias against Plaintiff and her alleged collusion with defense counsel, is conduct which courts routinely hold cannot defeat judicial immunity. *See, e.g., Tucker v. Outwater*, 118 F.3d 930, 932 (2d Cir.1997) ("The cloak of immunity is not pierced by allegations of bad faith or malice, even though unfairness and injustice to a litigant may result on occasion.") (citation omitted); *Dorman v. Higgins*, 821 F.2d 133, 139 (2d Cir. 1987) ("[A]n allegation that an act was done pursuant to a conspiracy has no greater effect than an allegation that it was done in bad faith or with malice, neither of which defeats a claim of absolute immunity"). The same goes for Plaintiff's allegations concerning Justice Friedman's revisions to the hearing transcripts. *See Green v. Maraio*, 722 F.2d 1013, 1015–1017 (2d Cir. 1983) (affirming that judge alleged to have altered transcript was entitled to judicial immunity).

10

In summary, Justice Friedman is entitled to absolute judicial immunity from monetary damages because she had subject matter jurisdiction over the State Action, and Plaintiff's allegations concern acts taken in her judicial capacity.

## B. Plaintiff's Demands for Injunctive Relief

To the extent Plaintiff seeks injunctive relief against Justice Friedman under 42 U.S.C. § 1983, such as an order from this Court vacating her prior decisions or requiring her to recuse herself, those requests are also denied. As previously noted, Section 42 U.S.C. § 1983 provides that injunctive relief against a judicial officer "shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Plaintiff does not allege, and the record in the State Action does not reflect, that any declaratory decree was violated. Nor does Plaintiff allege that declaratory relief was unavailable. Plaintiff could have—and often did—appeal Justice Freidman's prior decisions denying his motions to the First Department, making clear that declaratory relief was not "unavailable" to him. *See, e.g., Ashmore v. New York*, No. 12-CV-3032(JG), 2012 WL 2377403, at *3 (S.D.N.Y. June 25, 2012) (noting that "[d]eclaratory relief against a judge for actions taken within his or her judicial capacity is ordinarily available by appealing the judge's order"), *aff'd sub. nom. Ashmore v. Prus*, 510 Fed. App'x 47 (2d Cir. 2013); *Salem v. Paroli*, 260 B.R. 246, 254 (S.D.N.Y. 2001) (finding declaratory relief available to plaintiff who appealed state judge's decision declining to recuse himself from the plaintiff's case); *see also Buhannic et al.*, Index No. 653624/2016, Doc. 409 (notice of appeal on Justice Friedman's decisions on five motion sequences, including Plaintiff's motions for an expedited hearing, for indemnification, and for leave to amend). Plaintiff has also more recently appealed Justice Friedman's decision declining to recuse herself. *See id.* at Doc. 526. Accordingly,

11

Plaintiff has alleged no basis on which judicial immunity does not preclude his claims for injunctive relief against Justice Friedman, based on her decisions in the State Action.

Finally, the Court notes that Justice Friedman also moves to dismiss for lack of subject matter jurisdiction on grounds that sovereign immunity and the *Rooker Feldman* doctrine bar Plaintiff's claims, and alternatively, for failure to state a claim upon which relief can be granted. In light of the Court's conclusion that Justice Friedman is absolutely immune from suit in this case the Court need not address those alternative grounds.

## III. Leave to Amend

"District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not warranted where it would be futile." *Boone v. Codispoti & Assocs. P.C.*, No. 15-CV-1391 (LGS), 2015 WL 5853843, at *5 (S.D.N.Y. Oct. 7, 2015) (citing *Hill*, 657 F.3d at 122–24). Amendment is futile when "[t]he problem with [a plaintiff's] causes of action is substantive" and "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Such is the case here—better pleading cannot alter the fact that Defendant is immune from this suit. *See, e.g., Bernstein v. New York*, 591 F. Supp. 448, 469–470 (S.D.N.Y. 2008) (denying leave to amend where judicial and qualified immunity applied to defendants).

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED and Plaintiff's requests for permission to file documents electronically are DENIED as moot. The Clerk of Court is respectfully directed to terminate the motions pending at Dkts. 10, 13, and 17, and to close this case.

SO ORDERED.

Dated: February 7, 2019
New York, New York

Ronnie Abrams
United States District Judge